**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**LOCKWOOD BROTHERS, INC.,**

    **Plaintiff,**

  v.                                                **ACTION NO. 4:06cv61**

**ARNOLD SPEDITIONS GmbH,**

**and**

**ZIEMANN LUDWIGSBURG GmbH,**

    **Defendants.**

## OPINION AND ORDER

This suit arises from a dispute between Plaintiff Lockwood Brothers, Inc. ("Lockwood") and Defendants Arnold Speditions GmbH ("Arnold") and Ziemann Ludwigsburg GmbH ("Ziemann") regarding a freight contract. It is currently before the court on Ziemann's motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, for forum non conveniens. For the reasons stated below, Ziemann's motion is **DENIED**.

### I. Factual and Procedural History

Ziemann is a German corporation with its principal place of business in Ludwigsburg, Germany. It specializes in the fabrication of fermentation tanks used in the beer brewing process. Volker Mewes is a sales manager for Ziemann. Arnold is a German

corporation with its principal place of business in Rimpar, Germany. It serves as a freight forwarder and hauler. Ulrich Dietl is a representative of Arnold. Lockwood is a Virginia corporation with its principal place of business in Hampton, Virginia. It specializes in complex transportation projects. John Shaffner is a project manager for Lockwood.

In 2004, Coors Brewing Company ("Coors") began construction on a brewing facility in Elkton, Virginia. Coors hired Jacobs Engineering Group, Inc. ("Jacobs") to oversee the construction process. As part of this construction, Coors and Jacobs contracted with Ziemann for the purchase of forty large fermentation tanks for installation at its Elkton brewery. These fermentation tanks were approximately 19 feet 10 inches tall, 19 feet 10 inches wide, and 70 feet long. Ziemann constructed the fermentation tanks in Ludwigsburg, Germany, and was responsible for making arrangements to deliver them to Elkton.

Because of the large size of the fermentation tanks, Ziemann sought proposals from freight forwarders and haulers for the transportation of the tanks from Germany to Elkton. Ziemann selected Arnold as its primary freight forwarder. In order to complete the overland transportation in Virginia, Arnold initially hired Profreight Transportation, Inc. ("Profreight"). Arnold planned to ship the fermentation tanks by dedicated vessel from Germany to the Port of Hampton Roads and then store them at Shirley

Plantation near Hopewell, Virginia.  From this site, Profreight would then be responsible for transporting the fermentation tanks to Elkton after arrangements had been made with the Virginia Department of Transportation and the affected utility companies, as it was necessary to move all utility wires and cut back overhanging branches along the road route to Elkton.

In August 2005, problems arose with the overland transportation portion of the project in Virginia, and Ziemann and Arnold became dissatisfied with the pace of work and escalating costs of Profreight.  As a result, Ziemann and Arnold began seeking alternatives to Profreight.  In August 2005, Ziemann and Arnold contacted Lockwood by telephone and inquired if they could take over Profreight's responsibilities.  At this time, twenty of the forty fermentation tanks were being stored at Shirley Plantation, but none had reached the Elkton destination.  The final twenty tanks were due to be delivered to the Port of Hampton Roads in late September or early October 2005.

In early September 2005, after contacting Lockwood initially, Ziemann and Arnold entered into negotiations with Lockwood. Specifically, during the first week of September 2005, Juergen Gehrig, a representative of Ziemann, traveled to Hampton to discuss the transportation project.  After this initial visit by Gehrig, negotiations continued between Ziemann, Arnold, and Lockwood by telephone and email.  Additionally, in the third week of September

2005, Mewes of Ziemann and Dietl of Arnold traveled to Hampton to finalize the terms of the agreement. These negotiations occurred over a three-day period and resulted in the formation of a contract on September 22, 2005. While in Virginia at Lockwood's offices, Mewes, Dietl, and Shaffner, on behalf of their respective parties, drafted and signed the contract.

Among other things, the contract provided that Lockwood would transport the fermentation tanks from Shirley Plantation and the Port of Hampton Roads to Elkton. In addition, the contract provided a schedule of payments to be made to Lockwood based on a delivery schedule and other conditions. In particular, Ziemann was required under the contract to provide a bank guarantee for a portion of the payments. The contract also provided that if an acceptable bank guarantee was not established, Ziemann would be required to submit payment to Lockwood by wire transfer. In addition, the contract was to be wholly performed by Lockwood in Virginia and contained a Virginia choice of law provision.

Thereafter, Lockwood began performance in Virginia, and Ziemann remained involved in the decision-making process concerning the domestic transportation of the fermentation tanks. Specifically, Ziemann agreed to alternative routes of travel proposed by Lockwood and the time and costs associated with this change. Further, from September 2005, to March 2006, Ziemann continued communicating with Lockwood by telephone and email

regarding the progress of the transportation of the fermentation tanks.  During this time period, Ziemann also represented to Jacobs that Lockwood was its authorized representative for domestic transportation.

Lockwood filed a complaint against Ziemann and Arnold on April 27, 2006, seeking recovery under the following theories: (1) breach of written contract, (2) breach of oral contract, and (3) quantum meruit, all regarding a dispute over payment for work performed and utility costs advanced.  On July 20, 2006, Ziemann filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, for forum non conveniens, supported by affidavits of Mewes and Dr. Susanne Kratzsch, German counsel to Ziemann.[1]  Arnold filed its Answer on August 9, 2006, without objecting to personal jurisdiction.

**II. Motion to Dismiss for Lack of Personal Jurisdiction**

**A. Legal Standards**

Ziemann first requests that this action be dismissed for lack of personal jurisdiction.  When deciding a pre-trial personal jurisdiction motion under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction," and "the court must take all disputed facts and

---

[1] On May 19, 2006, nearly one month after Lockwood brought this action, Ziemann filed suit against Lockwood in Germany.  Ziemann's suit in Germany seeks a declaration that it does not owe any funds to Lockwood under the contract.

5

reasonable inferences in favor of the plaintiff." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (internal citations omitted).[2]

For a district court to exercise personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized by the long-arm statute of the forum state; and (2) the exercise of jurisdiction must comport with Fourteenth Amendment due process requirements. See id. (citing Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). Virginia's long-arm statute has been held to extend personal jurisdiction to the limits of due process. See Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004); Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 218 Va. 533, 534, 238 S.E.2d 800, 802 (1977) (per curiam) ("The purpose of our 'long-arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia."). Therefore, this court need only consider whether exercising personal jurisdiction over the defendant would offend due process.

The exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has sufficient "'minimum

---

[2] The burden is ultimately on the plaintiff to prove the grounds for personal jurisdiction by a preponderance of the evidence. See Carefirst, 334 F.3d at 396.

contacts'" with the forum state, such that requiring the defendant to defend its interests in the forum state "'does not offend traditional notions of fair play and substantial justice.'" Carefirst, 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Under International Shoe and its progeny, a nonresident defendant can be subject to either "specific" or "general" personal jurisdiction in the forum state, depending on the nature of that defendant's contacts with the forum state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). To determine whether specific jurisdiction exists, the court must consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted). In other words, the court must analyze whether a defendant could anticipate being sued in the forum state. In particular, the court must consider whether the defendant's actions were "'directed at the forum state in more than a random, fortuitous, or attenuated way.'" Mitrano, 377 F.3d at 407 (citation omitted). In order for a nonresident defendant to be subject to general personal jurisdiction, it must have significant

contacts with the forum state that are "'continuous and systematic.'" Carefirst, 334 F.3d at 397. In the instant case, there is no suggestion that Ziemann's contacts with Virginia are continuous and systematic.[3] Thus, the court will analyze only whether it has specific personal jurisdiction over Ziemann.

### B. Analysis

The determination of whether specific jurisdiction exists in this case requires examination of both the quantity and quality of Ziemann's contacts with the forum state. This analysis involves questions such as "who benefited from the contacts, who initiated them and why, whether the contacts involved any person's physical presence in the state, and what further conduct in the forum state was contemplated by the parties." Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 761 F. Supp. 423, 426 (E.D. Va. 1991). Furthermore, it is essential that the contract relied on to establish personal jurisdiction in this case have a "substantial connection" with the forum state. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957).

Here, it is undisputed that Ziemann contracted with Coors to supply forty large fermentation tanks for the Elkton brewery in Virginia. Lockwood has also presented prima facie evidence that Ziemann and Arnold initiated contact with Lockwood and solicited a

---

[3]Lockwood does not dispute that all of Ziemann's management, employees, and facilities are located in Germany, and that Ziemann does not regularly conduct business in Virginia.

8

quote after problems arose with Profreight's performance. The parties also specifically agreed to an arrangement whereby Lockwood would clearly perform all of its transportation services in Virginia for Ziemann's and Arnold's benefit. In addition, Ziemann initiated several contacts with Lockwood by telephone and email both before and after finalizing the contract.

Furthermore, representatives of Ziemann physically traveled to Virginia two separate times to negotiate the contract with Lockwood. First, Gehrig visited the Lockwood offices in Hampton on behalf of Ziemann in the first week of September 2005 to conduct preliminary negotiations. Second, Mewes traveled to Hampton on behalf of Ziemann to participate in a three-day round of negotiations, which resulted in the final contract. While in Virginia on this second visit, Mewes signed the contract, which contained a Virginia choice of law provision. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985) ("Although [the choice of law] provision standing alone would be insufficient to confer jurisdiction, we believe that . . . it reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

Moreover, after the contract was formed, Ziemann remained in frequent contact with Lockwood from September 2005, to March 2006, and participated in decision-making regarding the overland transportation of the fermentation tanks in Virginia.

Specifically, Lockwood proposed an alternative route for transporting the fermentation tanks to Elkton, and Ziemann evaluated and agreed to this change, evidencing Ziemann's control over the services rendered by Lockwood. Additionally, Ziemann communicated to Jacobs that Lockwood was Ziemann's authorized representative for domestic transportation.

The discussion above describes certain minimum contacts which Ziemann had with Virginia, by which it purposefully availed itself of the benefits and protections of Virginia law. Those contacts were not random, isolated, or fortuitous and were such that Ziemann should "reasonably anticipate being haled into court" here. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Further, these contacts demonstrate that the contract had a substantial connection to Virginia. As a result, this court's exercise of personal jurisdiction over defendant Ziemann is justified under the Virginia long-arm statute and comports with the Due Process Clause of the Constitution.[4]

---

[4]Ziemann primarily contends that there is no personal jurisdiction because there was never a contract between it and Lockwood. At this juncture, however, the court need not decide whether Ziemann was a party to the freight contract because dismissal on personal jurisdiction grounds is improper at this point based on such an argument. See Allied Capital, 761 F. Supp. at 429 (citing Carter v. Trafalgar Tours Ltd., 704 F. Supp. 673, 675 n.2 (W.D. Va. 1989) (stating that where jurisdictional facts and facts central to merits are "intertwined," the entire dispute is properly resolved only by proceeding on the merits)); supra note 2 and accompanying text.

**III. Motion to Dismiss for Forum Non Conveniens**

In the alternative, Ziemann requests that this case be dismissed pursuant to the common law doctrine of forum non conveniens. The Supreme Court of the United States has suggested that "the federal doctrine of forum non conveniens has continuing application only in cases where the alternative forum is abroad." Am. Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994). Thus, in this matter, Ziemann's use of the forum non conveniens doctrine is appropriate, because it argues that the most appropriate forum is in Germany.

The "forum non conveniens determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Under this doctrine, a federal district judge may decline jurisdiction over a case if the forum is seriously inconvenient for a party and an alternative forum exists. See id. at 249, 255 n.22. The rule was designed to prevent harassment of defendants. See id. at 249 n.15. The court remains cognizant of the plaintiff's right to choose its forum and notes that, "'[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946)); E. Scientific Mktg., Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 179 (E.D. Va. 1988) ("Plaintiff's privilege to choose, or not be

11

ousted from, his chosen forum is highly esteemed.") (citation and internal quotations omitted). Additionally, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum. See GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).

In resolving a motion to dismiss for forum non conveniens, the court must first determine whether the defendant has shown that an alternative forum is available because the doctrine presumes that at least two forums are amenable to process. See Gulf Oil, 330 U.S. at 507. Second, the court must evaluate private interest factors, which include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 508. Third, the court must analyze the public interest factors, which include the administrative difficulties associated with court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Id. at

508-09.

In this case, this court cannot find that a German court would have jurisdiction over Lockwood. The defendant does not address this threshold argument in its motions. Instead, the defendant immediately focuses on the private and public interest factors that it alleges support dismissal. However, the contract was negotiated, drafted, and signed in Virginia, and all of Lockwood's performance occurred in Virginia. In addition, Lockwood never traveled to Germany and its only contacts with Germany occurred by telephone and email. Thus, dismissal is inappropriate because Germany is not a valid alternative forum.

Nevertheless, even if this court considers the relevant private and public interest factors, the plaintiff's chosen forum is its home forum, and it follows that this choice should not be disturbed unless other factors "'clearly point toward trial in the alternative forum.'" See Prod. Group Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004) (quoting Piper Aircraft, 454 U.S. at 255). They do not. While it is true that litigating in Germany would be more convenient and less costly to Ziemann, Lockwood obviously finds it more convenient and less costly to litigate the dispute in its home forum. Thus, a transfer would merely "shift the balance of inconvenience" in defendant's favor. See Tekna-Seal, 696 F. Supp. at 180.

While the defendant argues that witnesses and documents

13

connected to it are located in Germany, the cause of action arose in Virginia and as a result, the plaintiff and many nonparty witnesses and documents, which form the bulk of outside evidence, are located in Virginia. See Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 637 (E.D. Va. 2003) (stating that convenience to non-party witnesses carries more weight in the transfer analysis). It is undisputed that the contract was negotiated, drafted, and signed in Virginia and that Lockwood's performance under the contract wholly occurred in Virginia. Because of this substantial connection to Virginia, many nonparty witnesses and documents, including those from utility companies, Coors, Jacobs, Profreight, and the Virginia Department of Transportation, are all located in Virginia or in the United States. As a result, this factor does not strongly favor dismissal.

This court's consideration of additional factors also weighs against dismissal. First, although the defendant argues that a German court could apply Virginia law, it would be more appropriate for a court in Virginia to apply such law. See Gulf Oil, 330 U.S. at 509 (stating that "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"). This factor, therefore, does not favor dismissal. Second, even though the defendant argues that the

14

German court's docket is less crowded than the United States District Court for the Eastern District of Virginia, it presents no evidence that the German court is more efficient or faster in its resolution of cases than this court.  Thus, this factor does not weigh in favor of either party.  Finally, this court is not persuaded by defendant's argument that a judgment rendered in Virginia would not be enforceable in Germany.  In fact, Lockwood presented evidence that Jacobs is currently withholding one million dollars, to which Ziemann claims it is entitled, pursuant to a contractual agreement with Lockwood.  These funds are located in the United States and could potentially be used to satisfy any judgment obtained by Lockwood.  Accordingly, the court finds that under the common law doctrine of forum non conveniens, there is no reason to override plaintiff's selection of Virginia as the forum for this action.

For the aforementioned reasons, Ziemann's motion to dismiss is **DENIED**.  The Clerk is **DIRECTED** to send a copy of the Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**



/s/
Rebecca Beach Smith

Norfolk, Virginia
September 18, 2006